IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE E. JONES, | ) | CASE NO. 5:12-CV-2658 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Nicole Jones's ("Plaintiff" or "Jones") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423,  is supported by substantial evidence and, therefore, conclusive.  For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On July 8, 2009, Jones filed an application for a Period of Disability and Disability Insurance benefits. (Tr. 10, 72).  Plaintiff alleged she became disabled on October 30, 2004, due to suffering from post-traumatic stress disorder (PTSD), panic attacks, anxiety, depression, and endometriosis.[1] (Tr. 113, 138).  The Social Security Administration denied Jones's application on initial review and upon reconsideration. (Tr. 74-76, 78-79).  In her first application for initial review dated March 2, 2010, Plaintiff indicated changes in her condition since her first disability

---

[1] Endometriosis is a disorder in which intrauterine cells grow outside the uterus.

1

report. (Tr. 160-67). Specifically, Plaintiff indicated that she had been diagnosed with bipolar disorder and attention deficit disorder around January 2010. (Tr. 161). In her application for reconsideration dated July 26, 2010, Jones stated that she had developed irritable bowel syndrome ("IBS") around May 2010. (Tr. 170). Plaintiff's date last insured ("DLI") for disability insurance benefits was June 30, 2009. (Tr. 10).

On July 26, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") to contest the denial of her application. (Tr. 82-83). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 93-97). ALJ Barbara Sheehe convened a hearing to evaluate Plaintiff's application on June 1, 2011. (Tr. 31-71). Jones, represented by counsel, appeared and testified before the ALJ. (Tr. 35-48). Witness Maureen Cooper, Plaintiff's therapist, and a vocational expert ("VE"), Gene Burkhammer, and also appeared and testified. (Tr. 48-61, 62-66). On June 27, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled during the relevant period, which spanned from October 30, 2004 to June 30, 2009. (Tr. 10-24). After applying the five-step sequential analysis,[2] the ALJ determined Jones

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. (Tr. 5). The Appeals Council denied Jones's request, making the ALJ's determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision. Review is proper pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Jones was born on July 16, 1978, and was 30 years old on the date last insured. (Tr. 22, 72). Accordingly, at all times, she was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563. Jones has a high school education. (Tr. 35). She has past work experience as a delivery driver. (Tr. 63).

### B. Medical Evidence

Jones has a documented history of significant childhood abuse from her family members and underwent inpatient psychiatric treatment as a teenager prior to the relevant period. (Tr. 227, 265, 314, 349). In making its determination, the undersigned finds that it is not necessary to provide the details of this history, but acknowledges that Jones experienced significant trauma. The evidence that follows is relevant to Plaintiff's appeal.

---

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

### 1.  Mental Condition

Jones first treated with mental health therapist Maureen Cooper, M.A., L.P.C.C.S., on January 14, 2008, approximately six weeks after the birth of her third son. (Tr. 897).  She spoke to Ms. Cooper about her childhood abuse, and also reported mood swings, experiencing severe anxiety, and being uncomfortable in crowds.  Jones indicated that she did not want to use psychiatric medication because in the past she experienced negative side effects.  Plaintiff reported she had not recently undergone counseling.

In February 2008, Plaintiff complained of postpartum depression and an anxiety attack to Dr. Son Dang, her family practitioner. (Tr. 647).  Dr. Dang's assessment was that Plaintiff suffered from depression and anxiety.  He prescribed medication and advised Plaintiff to follow through in three weeks.  On October 22, 2008, Plaintiff presented to her chiropractor Jeffrey Fedorko. (Tr. 728).  Mr. Fedorko indicated that Jones complained of her previous diagnosis of postpartum depression and that she was unable to take the medication she was prescribed because it affected her sleep.  Jones indicated that postpartum depression caused her to cry often and made her easily overwhelmed.

Jones underwent a series of counseling sessions with Ms. Cooper in May 2008.  (Tr. 892).  On May 15, 2008, Plaintiff confided that she was having a hard time with memories of past abuse.  (*Id.*).  A few days later, Ms. Cooper reported Jones was "[n]ot doing well," and her mother was very ill.  In June 2008, Plaintiff expressed that she felt refreshed after a weekend away. (Tr. 891).  During another June session in which she discussed her past abuse, Plaintiff dissociated, but Ms. Cooper noted that she "was able to stay with me," even while experiencing the dissociative episode.  (*Id.*).  In August 2008, Jones dissociated again and indicated to Ms. Cooper that she was dissociating often at home. (Tr. 890).  Ms. Cooper recommended that

Plaintiff find a grounding technique.  One week later, Jones indicated that she did not remember the previous week's session or the rest of the day. (*Id.*).  At the end of August, Ms. Cooper noted that a purple glass heart paperweight helped to ground Plaintiff during sessions. (Tr. 889).  In January 2009, Jones was beginning to "feel again" and was able to cry, but also had nightmares. (Tr. 884).  On her date last insured, June 30, 3009, Plaintiff stated that she experienced flashbacks to her past abuse and was having difficulty talking to Ms. Cooper. (Tr. 874).

On August 26, 2009, Ms. Cooper completed a report in connection with Plaintiff's application for disability. (Tr. 723-25).  The report provided Plaintiff's current diagnoses were severe PTSD and major depressive disorder.  Ms. Cooper opined that Plaintiff experiences "nightmares; panic attacks; isolation; dissociation; hypervigilence; anger outbursts; sleep disturbance; [and] diminished interest in life."  Ms. Cooper observed that Jones is intelligent and perceptive, but "has a very short attention span, gets easily confused, and often cannot remember things." Regarding Jones's level of functioning, Ms. Cooper found daily variations—some days Jones could not leave bed and others she could complete household chores.  Ms. Cooper explained that Jones has flashbacks almost daily, ranging from tolerable to severe, and noted that "[i]f a flashback is triggered by someone or something, she is in danger of hurting that person or herself.  When experiencing an episode, she cannot differentiate past from present."  She opined that Jones cannot tolerate groups of people, has "very poor stress tolerance," and would "not tolerate work stressors." Ms. Cooper concluded that Plaintiff's symptoms responded somewhat to treatment, but given the severity of her past, she will likely need years of treatment.

Six months after her DLI, on February 22, 2010, Plaintiff treated at Neuro Behavior Clinic. (Tr. 755-58).  S. Mahlotra, M.D., diagnosed bipolar disorder, ruling out PTSD and major depressive disorder. (Tr. 758).

In November 2009, Roseann Umana, a state agency non-examining consultant, reviewed Plaintiff's medical records, but indicated that there was insufficient evidence to make a mental status determination. (Tr. 730).  In April 2010, Irma Johnston, another state agency reviewer, opined that because Plaintiff had not treated with an acceptable medical source prior to her DLI, there was not sufficient evidence to make a disability determination. (Tr. 759, 771).

## 2.  Physical Condition

Plaintiff's medical record from Hall of Fame Women's Clinic indicate that she had been diagnosed with chronic pelvic pain and endometriosis since at least her alleged onset date. (Tr. 424).  On April 26, 2004, Jones underwent a hysteroscopy with dilation and curettage, and a diagnostic laparoscopy with biopsy, which showed endometriosis and adhesions. (*Id.*).  In February 2005, Plaintiff gave birth to her first child. (Tr. 425).  Jones last presented to Hall of Fame Women's Clinic in March 2005. (*Id.*).  Around 2009, in connection with Plaintiff's application for disability, a healthcare provider at the clinic opined that Plaintiff experienced no functional limitations and could "work, bend, stand, sit, lift, grasp, stoop, etc." (*Id.*).

Jones presented to gynecologist David Brandau, M.D., on January 31, 2007 with complaints of dyspareunia, pelvic pain, diarrhea, and shoulder pain. (Tr. 513).  Upon physical exam, Plaintiff's cervix, uterus, and ovaries were tender, but bladder was normal. (Tr. 514).  Dr. Brandau recommended laparoscopy for Plaintiff's endometriosis. (*Id.*).  Plaintiff delivered her third child in November 2007 without complications.  A little over a week after delivery, Jones presented to Mercy Medical Center with abdominal pain and lightheadedness, but no nausea or diarrhea. (Tr. 576).  Upon examination she had tenderness in her abdominal right lower quadrant, but normal bowel sounds. (*Id.*). A CT scan revealed a right renal calculus that was non-obstructive. (Tr. 577).  Jones was discharged in stable condition. (*Id.*).

On January 16, 2008, Plaintiff presented to the emergency room with complaints of lightheadedness, nausea, and diarrhea. (Tr. 568).  Plaintiff indicated that she had started a new birth control pill that day and had experienced a similar reaction in the past with birth control pills. (*Id.*).  The attending provider, Michelle Frangos, M.D., recommended follow-up on only an outpatient basis, given that Plaintiff's physical exam and lab work proved no significant findings, she showed signs of clinical improvement, and she indicated a previous reaction to a birth control pill. (*Id.*).  Plaintiff was discharged and instructed not to take the birth control pill.  On July 11, 2008, Jones presented to Dr. Dang for a checkup and complained of diarrhea after eating. (Tr. 645).  Plaintiff continued to treat her stage four endometriosis at Atrium OB/GYN, with little notable developments. (Tr. 650, 666, 660).  In December 2008, her physician recommended a hysterectomy to relieve her continued pain with endometriosis. (Tr. 668).

On April 18, 2009, Plaintiff presented to the emergency room with right side abdominal and flank pain. (Tr. 531).  Plaintiff complained of diarrhea after having been treated for sinusitis with a Z-pack.  Jones was discharged with a diagnosis of possible colitis and prescribed Flagyl, because she develops diarrhea from antibiotics.  Plaintiff returned to the emergency room on April 21, 2009, again complaining of abdominal pain. (Tr. 554).  She reported three episodes of vomiting and two episodes of diarrhea.  Plaintiff reported she had stopped taking Flagyl for diarrhea after her physician's recommendation.  A CT scan of the abdomen showed no acute abnormalities.  There was some mild bowel wall thickening in the sigmoid colon.  Upon discharge, Plaintiff was told to restart Flagyl. (Tr. 555).

In May 2009, Plaintiff underwent a total hysterectomy and left salpingo-oophorectomy (removal of the left ovary and fallopian tube) to resolve her symptoms of endometriosis, including pelvic pain and abnormal uterine bleeding, along with an incidental appendectomy.

(Tr. 625-26, 629).  On her DLI, June 30, 2009, Plaintiff indicated to Dr. Brandau that she had no post-operative complications and was resuming normal activity. (Tr. 654).

In December 2009, state agency physician, Walter Holbrook, M.D., reviewed Plaintiff's medical records for the period of alleged disability. (Tr. 744-51).  Dr. Holbrook assessed Plaintiff's physical residual functional capacity ("RFC") and determined that she could perform the full range of medium work.  In June 2010, Edmond Gardner, M.D., another state agency reviewer, independently affirmed Dr. Holbrook's RFC assessment. (Tr. 773).

### C.  Ms. Cooper's Testimony

During the hearing before the ALJ, Ms. Cooper testified on behalf of Plaintiff. (Tr. 50-61).  Ms. Cooper indicated that she treated Plaintiff two hours each week primarily for bipolar disorder and PTSD. (Tr. 50).  She provided that Jones "had trouble functioning day to day; lots of nightmares, flashbacks; severe mood swings; suicidal thoughts; [a] lot of depression; an inability to set good limits with people." (Tr. 50).   Ms. Cooper indicated that Plaintiff's husband reported that she was unable to perform normal chores around the home and other daily activities. (Tr. 52).  Ms. Cooper also noted that Plaintiff may go out with friends once a month and had experienced panic attacks when attending church. (Tr. 55).  In regard to Plaintiff's ability to work, Ms. Cooper indicated that Plaintiff can follow instructions, unless she dissociates or has a panic attack, which causes her to have to abandon the situation.  (Tr. 57).  When further questioned about Plaintiff's dissociative episodes, Ms. Cooper testified that she had observed Jones dissociate, but explained that during a dissociative episode, Jones can still function and is able to understand where she needs to go, such as to attend an appointment. (Tr. 60-61).  Ms. Cooper also stated that Plaintiff's ability to interact with co-workers would vary from day-to-day, with the ability to get along well at times. (Tr. 57).  Ms. Cooper concluded by stating

Plaintiff would be unable to work due to volatile mood swings, poor sleep quality due to nightmares, severe adhesions, and irritable bowel syndrome. (Tr. 59).

### III. The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 30, 2004 through her date last insured of June 30, 2009.

3. Through the date last insured, the claimant had the following severe impairments: chronic pelvic pain; endometriosis; renal calculi; obesity; obstructive sleep apnea (OSA); post-traumatic stress disorder (PTSD); and atypical depression with psychotic features.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)—including the exertional abilities to lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally and to sit, stand, and walk each for 6 hours during the course of an 8-hour day—except that she is further limited as follows:
   a. She is limited to tasks that involve superficial interaction with co-workers and the public and no teamwork or group projects; and
   b. She is limited to "low stress" work, defined as precluding tasks that involve high production quotas such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on July 16, 1978 and was 30 years old, which is defined as a younger individual age 18-49, on the date last insured.

. . .

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2004, the alleged onset date, through June 30, 2009, the date last insured.  (Tr. 10-24) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.

1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff advances four arguments in support of her assertion that the decision of the ALJ should be reversed.  Jones maintains that the ALJ erred by: (1) improperly evaluating the opinions of her treating mental health counselor, Ms. Cooper; (2) concluding that her irritable bowel syndrome ("IBS") was not a severe impairment; (3) finding that her mental impairments did not meet the appropriate listing levels; and (4) failing to fully credit her statements about the severity of her symptoms.  For the reasons that follow, the undersigned finds that Plaintiff's allegations do not warrant reversal.

### A.  Medical Evidence

Plaintiff maintains that the ALJ committed reversible error in granting "very little weight" to the office notes, August 2009 evaluation, and hearing testimony of her treating mental health counselor, Ms. Cooper.  Under the Social Security Regulations, only opinions from particular sources can establish the existence of an impairment or be given controlling weight. 20 C.F.R. 404.1513(a); SSR 06-03p.  These sources are labeled as "acceptable medical sources," and generally refer to licensed physicians, psychologists, optometrists, podiatrists, and pathologists.  20 C.F.R. § 404.1513(a).  Although mental health counselors do not fall under the Regulations' definition of an acceptable medical source, an ALJ should consider evidence from other medical professionals because such evidence may provide information regarding the

11

severity of a claimant's impairment.  20 C.F.R. § 404.1513(d)(1); SSR 06-03p; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007). Furthermore, Social Security Ruling 06-03p confirms that "although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p.  Those factors include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is other wither evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id.*

In the present case, it is undisputed that Ms. Cooper is not an "acceptable medical source," and therefore her opinions are afforded no special deference, despite her treatment history with Jones.  The ALJ granted "very little weight" to Ms. Cooper's hearing testimony and August 2009 report.  The ALJ did not specifically indicate the weight she attributed to Ms. Cooper's treatment notes.  Even so, the ALJ's decision includes a reasoned explanation supported by the record for not fully crediting Ms. Cooper's opinions.

A review of the record demonstrates that the ALJ properly considered the requisite factors under 20 CFR 404.1527(d) in deciding how to weigh Ms. Cooper's opinions.  The ALJ noted the lack of substantiating objective evidence and the inconsistency between Ms. Cooper's testimony, August 2009 report, and treatment notes.  As the ALJ explained, the "critical factor" in her evaluation of Ms. Cooper's opinions was that Ms. Cooper's treatment notes include little objective or clinical evidence supporting her opinion that Plaintiff's mental disorders preclude her ability to work. (Tr. 18).  Ms. Cooper's notes from January 2008 to June 2009 primarily

12

contain Plaintiff's reports of her mental or physical state or brief summaries of what occurred during the counseling session. (Tr. 894). In contrast to her treatment notes, Ms. Cooper's testimony and August 2009 statement speak to significant impairments such as Plaintiff's inability to complete household chores or tolerate groups of people, severe mood swings from "hyperactive" to "hypoactive" activity, and a poor tolerance for stress. (Tr. 50, 724-25). When questioned about the lack of correlation between her treatment notes and testimony, Ms. Cooper's only justification was that she does not keep detailed notes. (Tr. 54). Even though little objective or clinical findings supported Ms. Cooper's opinions, the ALJ still found Jones was limited to "low-stress" work that involves only superficial interaction with co-workers and the public, based on Ms. Cooper's observations. (Tr. 20).

Notwithstanding these sufficient justifications, Jones maintains that the ALJ's weighing of Ms. Cooper's opinions was not supported by substantial evidence and provides a number of reasons to support her allegation. First, Plaintiff alleges that it was inappropriate for the ALJ to discredit Ms. Cooper based on her testimony about the mental illnesses she treated Plaintiff for. Ms. Cooper testified she treated Plaintiff for PTSD and bipolar disorder (Tr. 50), but the ALJ noted that her treatment notes from the relevant period did not contain a diagnosis of bipolar disorder. (Tr. 18). Plaintiff accurately notes that Dr. Mahlotra diagnosed Plaintiff with bipolar disorder approximately five months after her DLI (Tr. 758), and Ms. Cooper included this diagnosis in her notes following the DLI. (Tr. 869). This likely explains Ms. Cooper's reference to the bipolar disorder in her testimony, and makes it questionable whether it was appropriate for the ALJ to give any weight to this discrepancy when evaluating the weight to assign Ms. Cooper's opinions. Regardless of any alleged error on this ground, the ALJ did not discredit Ms. Cooper's opinions solely for this reason, but provided other reasonable justifications.

Next, Plaintiff argues it was inappropriate for the ALJ to discredit Ms. Cooper's opinions on the ground that Ms. Cooper did not testify that she performed any mental status examinations of Plaintiff.  In addition, Plaintiff notes that the ALJ's concern that Ms. Cooper had simply transcribed Plaintiff's subjective statements during their counseling sessions was unsupported. Given that the ALJ did not specifically ask Ms. Cooper if she had performed any mental status examinations, Plaintiff correctly maintains that this is not an entirely accurate characterization of Ms. Cooper's testimony.  Even so, the undersigned finds that this is not sufficient grounds to find error with the ALJ's ultimate weighing of Ms. Cooper's opinions.  Independent of Ms. Cooper's testimony, Plaintiff does not point to mental status examinations in the record or more objective evidence from Ms. Cooper's treatment notes to support the therapist's opinions.  Though Plaintiff argues that Ms. Cooper's recorded observations of Plaintiff, during therapy and in other settings, were sufficient to support her testimony and her August 2009 statement, many of the treatment notes that Plaintiff cites are from observations after the DLI, making them of lesser consequence, and more importantly, Plaintiff does not point to objective functional limitations in these notes. (Pl. brief at 9).

Finally, Jones argues it was inappropriate for the ALJ to doubt Ms. Cooper's testimony regarding Plaintiff's dissociative episodes.  The ALJ acknowledged that Ms. Cooper's testimony about witnessing one of Jones's dissociative episodes had some support in her treatment notes, but the ALJ stated that she did not fully credit the severity of the dissociate episodes because,

> [I]f the claimant had truly been dissociating to the extent as implicated by Ms. Cooper's testimony, it would have been professionally irresponsible for her not to immediately refer the claimant to a physician for formal medical evaluation, to a psychiatrist for a formal mental status evaluation that might have resulted in a diagnosis of dissociative disorder, or even to let the claimant drive home after the appointment. (Tr. 19).

Plaintiff asserts that the ALJ erred because Plaintiff was already seeing medical doctors on a regular basis.  In addition, Plaintiff notes that Ms. Cooper suggested Plaintiff go to the hospital on one occasion, accompanied Ms. Jones to one psychiatric appointment, and noted that Jones can still function to some degree during her episodes.  While the ALJ is not a medical professional and should not make medical judgments, the ALJ did not error in her decision to not fully crediting Ms. Cooper's allegations of dissociation.  Though Plaintiff was treating with physicians during the relevant period, Plaintiff points to no record of Ms. Cooper referring Jones to a physician to address a potential dissociative disorder.  In April 2009, Ms. Cooper referred Jones to a physician for what appeared to be endometriosis, not dissociation. (Tr. 879-80).  Ms. Cooper attended a February 2010 psychiatric appointment with Plaintiff.  During that appointment, Dr. Mahlotra diagnosed bipolar disorder and prescribed medication, but did not appear to note dissociation, despite Ms. Cooper's recordings of frequent dissociative episodes. Most significantly, the ALJ observed that when further questioned about the dissociative episodes at the hearing, Ms. Cooper "seemed to back off of her earlier testimony by stating that the claimant 'can still function' even when she is having a dissociative episode," indicating that the episodes are not as severe as Ms. Cooper seemed to imply. (Tr. 19).  The ALJ concluded that Ms. Cooper's testimony about Plaintiff's dissociation was "not very resolute."  The ALJ's observations revealed that Ms. Cooper's testimony and treatment notes did not paint a clear picture of the severity of Plaintiff's dissociative episodes, which entitled the ALJ to attribute little weight to Ms. Cooper's opinions.

The Court notes that even where the evidence arguably supports the plaintiff, the reviewing court must uphold the decision of the ALJ if the evidence could reasonably support the conclusions reached by the ALJ. *See Her v. Comm'r v. Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999).  The undersigned concludes that the ALJ's determination regarding Ms. Cooper's opinions is substantially supported by the record and should be affirmed.

### B.  The ALJ's Finding at Step Two

Jones argues that the ALJ erred by failing to determine that her IBS was "severe" at step two in the sequential analysis.  At this step, the claimant must show that he has an impairment which significantly interferes with his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c); 416.920(c).  The ALJ's ruling here is viewed under a *de minimis* standard.  *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985); *Childrey v. Chater*, 91 F.3d 143 (6th Cir. 1996) (Table).  Thus, a claimant's impairment will only be construed as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Nevertheless, an ALJ's failure to properly name one of a claimant's impairments as severe will not always constitute reversible error.  Remand is not necessary, so long as the ALJ finds the claimant to suffer from at least one severe impairment and continues to evaluate both the claimant's severe and non-severe impairments at the latter stages of the sequential analysis. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'") (*citing Maziarz*, 837 F.2d at 244).

The record supports the ALJ's finding that Plaintiff's IBS was not a severe impairment. Jones testified that during and after the relevant period she would have bowel movements five to ten times per day. (Tr. 38). However, as the ALJ explained, the medical evidence during the relevant period did not support these allegations. (Tr. 13). From October 30, 2004 to June 30, 2009, Plaintiff points to approximately four instances where she complained to medical providers of diarrhea. Moreover, as noted by the ALJ, some of those complaints were not viewed as severe by healthcare providers or were unrelated to her IBS. For example, in July 2005, after complaining of diarrhea, Plaintiff's provider instructed her to user over-the-counter Imodium. (Tr. 455). On January 16, 2008, Plaintiff complained of diarrhea, but also stated that she had started a new birth control pill that day and had a similar reaction in the past, indicating that this seemed to be a side effect of the new birth control pill, not IBS. (Tr. 568). In April 2009, Plaintiff's providers speculated that she may have a possible colitis when she presented with diarrhea. (Tr. 554). However, the report also indicates that she had just stopped taking Flagyl, which appears to have been prescribed for irregular bowel movements. (*Id.*).

Assuming *arguendo* that the ALJ's failure was error, such an omission does not warrant remand because the ALJ found that Jones suffered from severe impairments. The ALJ identified the following severe impairments through Plaintiff's DLI: chronic pelvic pain, endometriosis, renal calculi, obesity, obstructive sleep apnea, PTSD, and atypical depression with psychotic features. The ALJ continued to consider all of Plaintiff's impairments, severe and not severe, in the balance of her analysis. While determined the RFC, the ALJ noted Plaintiff's complaints of diarrhea during the relevant period. (Tr. 20). However, the ALJ did not include a corresponding limitation in the RFC, given the scarcity of these complaints and because Plaintiff points to no medical provider documenting functional limitations from this symptom, either before or after

the DLI. (Tr. 21).  As Defendant notes, the VE testified that even if Plaintiff would require both access to a restroom "as needed" and two breaks per day in addition to normal breaks, there would still be jobs available. (Tr. 65-66).  As a result, the ALJ's finding of a limitation based on Plaintiff's IBS likely would not have affected her finding that Plaintiff is not disabled.  Thus, Plaintiff's arguments are insufficient for remand.

## C.  The ALJ's Finding at Step Three

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3).  A claimant will be deemed disabled if his impairments meet or equal one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question.  20 C.F.R. § 404.1526(b)(3).  To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).  At this step, it is the claimant's burden to provide evidence showing that she equals or meets the listing. *Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Here, Plaintiff argues the ALJ wrongly concluded that she did not meet or medically equal the listings for affective disorders or anxiety disorders, 20 C.F.R. Part 404, Subpart P,

Appendix 1, §§ 12.04 and 12.06 ("Listing 12.04 and 12.06").  Plaintiff submits that her condition meets Paragraph A of the listings and the ALJ's evaluation of the Paragraph B criteria was not supported by the record.  Given that Listing 12.04 contains an identical Paragraph B as set forth in Listing 12.06, the Court will address the two together.

To establish an affective disorder or anxiety disorder, Plaintiff must prove, in part, that as a result of her mental condition, she suffers from at least two of the following conditions listed in Paragraph B of sections 12.04 and 12.06:

1. Marked restrictions of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, §§ 12.04(B) and 12.06(B).[3]  The Regulations provide that to establish a marked limitation in any of these areas, plaintiff must show that her impairment "seriously interfere[s] with the ability to function independently, appropriately and effectively."

20 C.F.R. § 404, Sbpt. P, App. 1; *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988).

The ALJ ruled that Plaintiff did not meet or medically equal these listings because Plaintiff met none of the B criteria. (Tr. 14-15).  Specifically, the ALJ found Jones was only *mildly* restricted in activities of daily living and social functioning; *moderately* limited in concentration, persistence, or pace; and *never* experienced an episode of decompensation during the relevant period. (Tr. 14-15).  Plaintiff claims that she experienced marked restrictions of her activities of daily living, social functioning, and concentration, persistence, or pace.  However, the ALJ's finding that Plaintiff did not satisfy the B criteria is supported by substantial evidence

---

[3] As an alternative to meeting two of the four criteria of Paragraph B, an applicant may meet the criteria in Paragraph C of Listing 12.04 and/or Listing 12.06. Because Plaintiff has not argued that she meets or exceeds the requirements of Paragraph C, the Court has not quoted the same.

of record.  The ALJ considered all of the evidence and reasonably determined that Plaintiff is not markedly impaired in any major mental functioning domain.

Because of her mental condition, Plaintiff experienced only mild restrictions in activities of daily living.  As the ALJ noted, during the relevant period, Plaintiff gave birth to three sons. (Tr. 425, 445, 716).  Though she had assistance caring for her young children, she was still able to do so.  Plaintiff admitted that she prepared meals, shopped for groceries, and washed dishes. (Tr. 159).  Her husband provided her some assistance with household chores and cleaning. (*Id.*). Plaintiff testified that on a daily basis, she drove in order to take her children to school, go grocery shopping, or attend counseling appointments. (Tr. 36).

The ALJ also reasonably found Plaintiff had mild difficulties in social functioning. The ALJ acknowledged that Plaintiff testified that she stopped attending church services and went shopping later in the evening because large groups of people caused her anxiety.  In addition, Plaintiff testified that she had anxiety when taking her son to the bus. (Tr. 46).  However, despite this alleged anxiety, the ALJ noted that Jones still left her home on a daily basis. (Tr. 14). Furthermore, Jones spoke with her mother on the phone and occasionally visited with other family members. (Tr. 159).  Plaintiff alleged no problems interacting with her husband and sons.

Additionally, the ALJ substantiated her finding that Plaintiff suffered from moderate difficulties with regard to concentration, persistence, or pace.  Jones stated that she had difficulty paying bills on time, cleaning her home, and making appointments on time. (Tr. 161).  She became "extremely distracted with the littlest tasks and [was] unable to finish them and [required] help from someone else." (*Id.*).  Yet, as the ALJ noted, Jones enjoyed reading and writing. (Tr. 159). With some assistance from her husband and others, she cared for three young

children. Finally, it is uncontested that Plaintiff did not experience repeated, extended episodes of decompensation during the relevant period.

Plaintiff points to evidence that may support some level of impairment; however, she has failed to make the showing of marked limitations or point to substantial evidence demonstrating that the ALJ erred by finding she did not meet or medically equal the criteria set forth in Paragraph B of the relevant listings.  While Plaintiff may meet the requirements of Paragraph A of Listings 12.02 and 12.04, there is substantial evidence to support the finding of only mild or moderate limitations under Paragraph B, and therefore, remand on this ground is not warranted.

### D.  Plaintiff's Credibility

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* SSR 96-7p).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. § 404.1529(a); *Rogers*, 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce

the claimant's symptoms. _Rogers_, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. _Id._ The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. _Id._; _see_ _Felisky_, 35 F.3d at 1039-40; SSR 96-7p.

Here, the ALJ applied the two-step test and at step two concluded that Jones's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. When making her credibility determination, the ALJ considered the factors listed in SSR 96-7p and all of the evidence in the record. The ALJ provided a number of good reasons for discrediting Plaintiff's testimony. Despite the ALJ's reasonable justifications, Jones alleges that the ALJ committed six specific errors and thus her finding was not supported by substantial evidence. The Court finds that Jones's allegations lack merit.

First, Plaintiff maintains it was improper for the ALJ to note that she had accomplished a great deal after her 1995 discharged from Germaine Lawrence School, a residential group home. Plaintiff resided at Germaine Lawrence soon after she was removed from the care of her parents and was discharged from Nashua Memorial Hospital where she was treated for psychological impairments arising from abuse. The ALJ noted that Jones graduated from high school, attended two years of college, married, and held jobs. In addition, after Jones turned eighteen, she no longer received any form of psychological treatment. Plaintiff alleges that the ALJ failed to

recognize that her medical conditions caused her to miss college classes as she testified (Tr. 39), and that she did not complete college because her mental aliments prevented her from working to pay tuition. (Tr. 36).  Furthermore, Jones argues that she testified about her medical conditions causing her to miss work.  While Plaintiff's allegations may be true, the ALJ was entitled to note that following a period of abuse and psychiatric hospitalization, Plaintiff showed fairly significant signs of recovery.

Second, Plaintiff states that she never testified that she stopped working due to pregnancy, as the ALJ wrote in her opinion. (Tr. 17, 39).  Jones is correct in that she testified only: "I was pregnant when I did finally quit, but I was only a couple of months." (Tr. 39).  Despite this error, the ALJ correctly observed Jones gave birth to three children during the relevant period and was able to provide care for herself and family.  This evidence does not comport with Plaintiff's allegations of disabling mental aliments since she stopped working.

Next, Plaintiff argues that the record contains many references to her difficulty caring for her children without significant assistance from others.  Given this evidence, she maintains that it was incorrect for the ALJ to note that her ability to raise three children was consistent with her RFC.  However, the ALJ acknowledged that Plaintiff had help caring for her family and took this evidence into account when evaluating Plaintiff's claim. (Tr. 14).  The ALJ was entitled to weigh Plaintiff's statements about the level of assistance she had, and moreover, the ALJ took other factors into account when evaluating Plaintiff's credibility.

Fourth, Plaintiff indicates the ALJ was incorrect when she found treating medical doctors had not documented any "observations of severe anxiety or depression" to support Plaintiff's testimony. (Tr. 18).  While Jones cites to several medical reports that note diagnoses of depression and anxiety, her argument is not well-taken.  The ALJ stated that Plaintiff's medical

providers have not indicated any "observations"—in contrast to "diagnoses"—of severe anxiety or depression, which would support her allegations of disabling symptoms. The mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). It was the ALJ's responsibility to assess the credibility of Plaintiff's statements regarding the severity of her pain or symptoms. *See* Duncan, 801 F.2d at 853-54; Felisky, 35 F.3d at 1039-40. As a result, the fact that Plaintiff's healthcare providers assessed that Plaintiff suffered from anxiety and depression is not enough to show that those conditions were disabling or entitle Plaintiff's complaints to greater weight. Plaintiff does not point to medical records that include physicians' observations, which would support the significant limitations she alleges arise out of her depression and anxiety. In fact, the ALJ referred to physicians' notes about visits when Plaintiff was not anxious or depressed. (Tr. 18). For example, Jones expressed happiness with a pregnancy. (Tr. 509). Plaintiff also reported she was sleeping and generally doing well after having started to see Ms. Cooper for counseling. (Tr. 707). Though Jones argues that Ms. Cooper's notes and testimony were replete with anxious and PTSD-influenced behavior, the ALJ reasonably did not fully credit Ms. Cooper's opinions as previously discussed herein.

Fifth, according to Plaintiff, the ALJ incorrectly found she claimed diagnoses of bipolar disorder and attention deficit disorder (ADD) during the relevant period. (Tr. 18). Jones argues that she never directly alleged she was diagnosed with these disorders prior to her DLI, but by the time of the hearing she had been diagnosed with both. In her Disability Reported dated March 2, 2010, Plaintiff indicated that she has been diagnosed with bipolar disorder and ADD around January 2010. (Tr. 161). While the ALJ is entitled to look at statements the individual made to the Social Security Administration at each step of the administration review process,

whether this was ground for discrediting Plaintiff was not clear, given that the application acknowledged the diagnoses occurred after the DLI. *See* SSR 96-7p.  Regardless of any alleged error on this point, substantial evidence supports the ALJ's credibility determination as will be discussed below.

Finally, Jones takes issue with the ALJ's discounting her complaints of "gastric issues." Plaintiff's brief provides:

> The ALJ relied primarily on the fact that few imaging studies were conducted that supported her complaints of gastric issues.  However, Ms. Jones has alleged that her gastric issues result primarily from her abdominal adhesions and endometriosis, which are well documented in the record.

(Pl. brief at 19).  The ALJ acknowledged that the record documents Plaintiff's complaints of pelvic pain and diagnosis of endometriosis, but found that the evidence did not establish more significant functional limitations through the DLI beyond a restriction to light work.  Despite Plaintiff's complaints, she points to no medical source imposing limitations based on her endometriosis or adhesions.  While taking these ailments into account, reviewing state agency physicians found Plaintiff capable of medium work. (Tr. 744-51, 773).

The ALJ provided sufficient reasons for finding Plaintiff's allegations regarding the severity of her limitations less than credible.  The ALJ noted that objective medical evidence did not support Plaintiff's allegations of disabling symptoms, given that medical doctors did not impose limitations on the basis of mental or physical impairments.  For example, the ALJ noted that following a hysterectomy to alleviate pain from endometriosis, Plaintiff's gynecologist reported that she was resuming normal activity and had a normal abdominal examination. (Tr. 654).  Although Plaintiff testified that she suffered from up to ten bowel movements each day during the relevant period, the ALJ noted little objective support in the medical record. (Tr. 13). Despite Plaintiff's testimony about allegedly disabling mental symptoms, the ALJ found that in

terms of activities of daily living, Plaintiff was able to care for three young sons, with some assistance from her husband and others.  It was permissible for the ALJ to consider Plaintiff's retained ability to perform these types of activities and to construe this evidence against her. SSR 96-7p; *see Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (finding that an ALJ may consider the plaintiff's household activities when evaluating the plaintiff's complaints of pain).  The ALJ also indicated inconsistencies in Plaintiff's statements. For example, while Jones expressed difficulty being in certain public forums around groups of people (Tr. 47), she also stated that she was able to leave her home on a daily basis. (Tr. 36).

Plaintiff carries the burden to show that substantial evidence did not support the ALJ's credibility determination.  An ALJ's ruling must stand so long as it is supported by substantial evidence, even though substantial evidence might also support a difference conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  Plaintiff has failed to carry her burden, and as a result, the undersigned must affirm.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: November 6, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objective has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).